# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LAVON HARMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV226SNLJ |
| ) | |
| ST. LOUIS COUNTY, ET. AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff has filed a second amended complaint asserting §1983 claims and a state-law negligence claim arising from a collision with a police cruiser while riding his motorcycle. This matter is before the Court on the defendants' original joint motion to dismiss (#8), filed March 26, 2008. The instant motion has been supplemented to seek dismissal of plaintiff's second amended complaint. *See*, Document #22. Although plaintiff filed responsive pleadings (#12 and #16) to the original motion to dismiss, as of today's date, he has not filed a responsive pleading with respect to the defendants' joint supplemental memorandum in support of dismissing second amended complaint.

Plaintiff's original complaint was in two (2) counts: Count I was a §1983 claim for "Intentional and Deliberate Deprivation of a Property Interest by Falsifying an Accident Report and Deliberately Omitting Factual Information from that Police Report"; and Count II was a state-law tort claim for negligence against defendants St. Louis County and Price only. Plaintiff's proposed amended complaint adds defendant John Wall but remains in two (2) counts: Count I is now a §1983 claim for "Willful, Malicious, and Intentional Deprivation of Property and Privacy Interest by Willfully, Maliciously, and Intentionally Falsifying a Police Report; Willfully,

Maliciously, and Intentionally Charging Plaintiff with a Crime He Did Not Commit; and Willfully, Maliciously, and Intentionally Obtaining His Medical Records by Willfully, Maliciously, and Intentionally Seeking a Grand Jury Subpoena for the Purpose of Securing Medical Records; and Count II is again a state-law tort claim for negligence against defendants St. Louis County and Price only.

Plaintiff then attempted to file a (first) amended complaint.[1] Upon review of the purported amended complaint, and the defendants' opposition to filing of same, the Court found that the purported amended complaint did not comport with Rules 8 and 10 of the Federal Rules of Civil Procedure because he had asserted three (3) separate and independent §1983 claims in a single count. *See*, Court Order #19. The Court directed the plaintiff to file a second amended complaint in which "[E]ach of these §1983 claims must be set forth in a separate count detailing as far as practicable the circumstances giving rise to each occurrence of the alleged civil rights violation." Court Order #19. Furthermore, the Court specifically warned the plaintiff that "[T]he second amended complaint is simply a proper drafting of the claims as set out in the proposed amended complaint. Plaintiff is not to add parties or claims but simply draft a complaint that comports with Rules 8 and 10." Court Order #19, n. 2.

Plaintiff's second amended complaint is now in three (3) counts: Count I is a prolonged narrative of plaintiff's "factual" version of the collision and its aftermath entitled "Violation of the Equal Protection & Due Process Clauses of the Fourth and Fourteenth Amendments by Willful, Malicious, and Intentional Falsification of a Police Report"; Count II is a continued narrative of plaintiff's "factual" version of the police investigation regarding plaintiff's post-collision

---

[1] *See*, plaintiff's motion for leave to file amended complaint (#10), with attached purported amended complaint (#11), filed April 2, 2008.

emergency medical care entitled "Violation of Constitutional Privacy Rights by Improperly Obtaining Medical Records"; and Count III is plaintiff's state-tort claim entitled "State Negligence Claim".

Defendants seek to dismiss this cause of action based upon plaintiff's non-compliance with the Court's Order #19, or in the alternative, for failure to state a claim upon which relief can be granted.

Plaintiff's second amended complaint no longer includes this §1983 claim regarding the intentional charging plaintiff with a crime he allegedly did not commit; nor does it include any longer a §1983 claim for a due process violation in being deprived a property right regarding attorneys fees expended by plaintiff (in connection with the accident). However, the second amended complaint now includes two (2) new and different §1983 claims within Count I: a due process claim for intentionally falsifying the police investigative report in an "attempt to deprive him of certain property rights, to wit: his claim for personal injuries . . ."; and an equal protection claim asserting that plaintiff is a member of a protected class - "persons injured in automobile collisions with the potential to pursue claims against responsible parties", and that the police report was falsified in order to treat him differently due to his status as a person involved in a collision with a St. Louis County police officer.[2] Count II is a §1983 claim for violation of a privacy right in connection with his emergency care medical records (not present in the original complaint).

It appears to the Court that the second amended complaint fails to comply with the Court's Order in that it sets forth new claims not contained in the original complaint; and,

---

[2]Although it is somewhat unclear, the second amended complaint also includes within Count I an expanded municipal liability claim against all defendants.

furthermore, still fails to comport with Rules 8 and 10 by asserting numerous §1983 claims in a single count. On this basis alone, the Court could dismiss this cause of action.

Furthermore, plaintiff's complaint is replete with legal conclusions, factual speculations, and his own "evidentiary findings". This is not the proper form for a complaint in federal court. A federal complaint is not the manner by which arguments over factual and legal issues are presented. Rules 8 and 10 are quite explicit in what is required under the federal rules, and this complaint simply does not meet the requirements. Notwithstanding this finding, the Court further holds that plaintiff cannot set forth any claim upon which relief can be granted in federal court.

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d. 623, 627 (8th Cir. 2001) *quoting* Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)(abrogating the prior "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id., 127 U.S. at 1974. A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." Id., 127 U.S. at 1974.

In passing on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Kottschade v. City of Rochester, 319 F.3d. 1038, 1040 (8th Cir. 2003). While a complaint challenged by a Rule

12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1265 (internal citations omitted). "Although the pleading standard is liberal, the plaintiff must allege facts – not mere legal conclusions – that, if true, would support the existence of the claimed torts." Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1062 (8th Cir. 2005) *citing* Schaller Tel. Co. v. Golden Sky Systems, 298 F.3d. 736, 740 (8th Cir. 2002). In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982). The primary issue for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but whether the complaint adequately states a claim; and therefore, the plaintiff is entitled to present evidence in support of that claim. A complaint may not be dismissed based upon a district court's assessment that the plaintiff will fail to present evidentiary support for the complaint's allegations or will ultimately fail to prove one or more claims to the satisfaction of the factfinder. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1969, n.8; Neitzke v. Williams, 490 U.S. at 327 ("What Rule 12(b)(6) does not countenance are dismissals based upon a judge's disbelief of a complaint's factual allegations."). With this plausibility standard in mind, this Court turns to an examination of the plaintiff's complaint.

### Count I - §1983 Due Process Claim

Firstly, the Court cannot discern what exactly is plaintiff's Fourth Amendment claim. Plaintiff is not asserting a claim for false arrest or lack of probable cause to make an arrest. When plaintiff's allegations are viewed in their broadest possible light, his claim appears to be solely that

5

the defendants, acting under the color of state law, denied the plaintiff due process and equal protection of the laws by knowingly and intentionally preparing and filing a false accident report. Plaintiff has not offered any explanation or caselaw as to how the preparation and/or filing a false police report, in and of itself, violates any identified Fourth Amendment rights. Thus, any purported claim for violation of plaintiff's Fourth Amendment rights will be dismissed.

As for his purported Fourteenth Amendment due process rights violation, plaintiff contends that the defendants filed a police investigation report which did not detail a witness account and wrongly concluded that the motorcycle headlight was not operating at the time of the accident. There is no constitutional right to an accurate police report. Shock v. Tester, 405 F.2d. 852, 855 (8th Cir. 1969); *see*, Landrigan v. Warwick, 628 F.2d. 736, 744 (1st Cir. 1980); White v. Tamlyn, et. al., 961 F.Supp. 1047, 1056-57 (E.D.Mich. 1997); Jarrett v. Township of Bensalem, 2009 WL 418623 (3rd Cir. 2009) *aff'g* 2008 WL 818615 (E.D.Pa. 2008)[3]; Culbreath v. Morgan, 2006 WL 2331111 (E.D.Ark. 2006); Bush v. City of Philadelphia, 1999 WL 554585 (E.D.Pa. 1999). Such action only constitutes a due process violation when the alleged falsified report leads to an unconstitutional deprivation of life, liberty, or property. Landigran, at 745; White v. Tamlyn, at 1056.

In the instant case, plaintiff contends that his due process rights have been unconstitutionally violated because the defendants' actions are an "unconstitutional **attempt** to deprive him of certain property rights, to wit: his claim for personal injuries, without due process." Plaintiff's Second Amended Complaint (#20), pg. 8, ¶29 (emphasis added). This allegation fails to support a viable §1983 claim for two (2) reasons: firstly, plaintiff has failed to

---

[3]Although the Court does not normally cite to unpublished opinions, it does so in those circumstances wherein such opinions offer legal guidance on a crucial issue before the Court.

plead any **presently existing** constitutional deprivation. *See*, Landigran, at 744-45 (the mere existence of a false police report, sitting in a police station, does not by itself deprive a person of a right secured by the Constitution and laws); Jarrett, 2008 WL 818615, *4 (E.D.Pa. 2008); and secondly, assuming that this is an inartfully drafted claim for "denial-of-access-to-courts", plaintiff's allegation fails to plead that he has been actually precluded from filing and pursuing a lawsuit due to the alleged falsification of the police report. "The right of access to the courts is well-established. The right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant." Scheeler v. City of St. Cloud, Minn., 402 F.3d. 826, 830 (8th Cir. 2005)(citations omitted). Even viewing plaintiff's allegations in the broadest possible light, he still fails to state a due process violation for the very reason that the existence of this alleged falsified police report has not thwarted his pursuit of a lawsuit in this Court. He has not been denied actual access to this Court nor has he been denied "meaningful access" to this Court by the mere existence of the subject police report. *See*, Beaulieu v. Ludeman, 2008 WL 2498241 (D.Minn. 2008)(In order to survive a motion to dismiss, a plaintiff must allege in a access-to-courts claim that the defendants' actions resulted in actual harm or actual injury). The Court finds that plaintiff has failed to set forth a cognizable §1983 Fourteenth Amendment due process violation claim because the mere preparation and/or filing of an alleged false police investigation report did not cause him an actual, presently existing constitutional deprivation.[4]

---

[4]Given the vague nature of plaintiff's claim, it could be alternatively viewed as some type of "failure-to-investigate" due process claim. *See*, Scheeler, at 830. However, such a claim would still require a viable allegation that defendants displayed a deliberate indifference to plaintiff's right to access the courts through their investigation of the accident. Based upon the allegations of the second amended complaint, the plaintiff has alleged nothing more than a failure to provide a witness statement in the report, and an "evidentiary dispute"over the status of the motorcycle headlight at the time of the accident. Neither of these allegations meet the test for

## Count I - §1983 Equal Protection claim

Next, plaintiff alleges that his Fourteenth Amendment equal protection rights have been violated based upon his alleged status as "a member of a protected class, to wit: persons injured in automobile collisions with a potential to pursue claims against responsible parties.". Plaintiff's Second Amended Complaint (#20), pg. 8, ¶30. Plaintiff asserts that "[T]he Defendants acted with discriminatory intent by treating Plaintiff differently by generating false evidence and charging Plaintiff with traffic violations due to his status as an individual in a vehicular collision with Officer Price." Plaintiff's Second Amended Complaint (#20), pg. 8, ¶30.

It is unclear from the plaintiff's complaint exactly what his equal protection claim purports to be: either he was treated differently from other individuals who have had motor vehicle collisions with a St. Louis County police officer or he was treated differently because he was injured in a motor vehicle collision "with the potential to pursue claims against responsible parties." Either way, plaintiff has failed to state a proper equal protection claim because his "class" is not a judicially recognized suspect class (such a race, color, religion, gender) which triggers the equal protection clause.

However, the Equal Protection Clause not only protects against discrimination of members of an identified classification, but also where the plaintiff alleges a "class of one" equal protection claim because s/he was "intentionally treated differently from others similarly situated

---

stating a valid substantive due process violation; i.e., "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Holloway, 316 F.3d. 777,780 (8th Cir. 2003); *see also,* Brockinton v. City of Sherwood, Ark., 503 F.3d. 667, 672 (8th Cir. 2007)(in order to demonstrate an inadequate investigation Fourteenth Amendment due process claim, a plaintiff must show that the failure to investigate was intentional or reckless, thereby shocking the conscience); Terrell v. Larson, 396 F.3d. 975, 980-81 (8th Cir. 2005). Ultimately, these allegations, without more, simply do not support plaintiff's claim that defendant "deliberately and intentionally falsif[ied] the accident report."

and that there is no rational basis fo the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000); Flowers v. City of Minneapolis, Minn., et. al., 2009 WL 635243 *quoting* Village of Willowbrook v. Olech, *supra*. However, a "class of one" theory of equal protection is inapplicable in a context that involves discretionary decision-making. Flowers v. City of Minneapolis, Minn., *supra.* (*citing* Engquist v. Oregon Dept. of Agriculture, 128 S.Ct. 2146, 2154 (2008)). "A police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion." Flowers, *supra*. Based upon this legal precept, and the findings of the Engquist Court, the Eighth Circuit Court of Appeals held that "while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim." Flowers, *supra*. Thus, Harmon's equal protection claim also fails.

### §1983-Municipal Liability

Finally, plaintiff asserts a claim of municipal liability against all defendants for "follow[ing] a policy and/or pattern of misconduct established by Defendant St. Louis County of intentionally falsifying accident reports and accident reconstruction analyses so as to exonerate Defendant St. Louis County and its employees from liability in situations where the negligence of said Defendants has caused personal injuries to persons."

Liability under §1983 for a governmental entity must be based upon an official custom, policy, or practice of the city that causes the constitutional deprivation, Monell v. New York City Department of Social Services, 436 U.S. 658, 690-94 (1978); Davison v. City of Minneapolis, Minnesota, 490 F.3d. 648 (8th Cir. 2007); Granda v. City of St. Louis, 472 F.3d. 565, 568 (8th Cir. 2007); Avalos v. City of Glenwood, 382 F.3d. 792, 802 (8th Cir. 2004), or is so pervasive among non-policymaking employees of the municipality so "as to constitute a custom or usage

with the force of law." Granda, at 568 *quoting* Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003). Liability will not attach simply because the municipality employs the alleged tortfeasor. Monell, 436 U.S. at 694.

"Municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability." Russell v. Hennepin County, 420 F.3d. 841, 846 (8th Cir. 2005) *quoting* Angarita v. St. Louis County, 981 1537, 1546 (8th Cir. 1992)(*citing* St. Louis v. Praprotnik, 485 U.S. 112, 121-22 (1988)). Although proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, *see,* Davison, *supra.*, *citing* Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985), "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." Davison, *supra.*, *quoting* Praprotnik, 485 U.S. at 123; *see*, Angarita, at 1546.

There is a distinction between final policymaking authority and final decisionmaking authority. In Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), the Supreme Court supplemented its pronouncement that "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id., 475 U.S. at 483, n.12. For example, a county sheriff may have the discretion to hire and fire sheriff department employees but this does not make his the county official responsible for establishing county employment policy. This would be true even if the county sheriff exercised that discretion in an unconstitutional manner. *See*, Davison, *supra. citing* Pembaur, 475 U.S. at 483, n.12. Whether an official had final policymaking authority is a question of state law. Pembaur, 475 U.S. at 483

(noting that "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority.").

"Claims against a municipality based on the acts of an individual officer or entity instead of a written policy or code have succeeded in circumstances where the action was not `subject to significant review' because the officer was in a `policy making position . . . represent[ing] the official policy of the municipality.'" Granda, at 568 *quoting* McGautha v. Jackson County Collections Dept., 36 F.3d. 53, 56 (8th Cir. 1994). However, before a municipality can be held liable, there must be an unconstitutional act by the municipal employee or official. Russell, at 846; Avalos, at 802. A municipality is not liable under §1983 for the negligent acts of its employees/officials. Russell, at 846 *citing* Daniels v. Williams, 474 U.S. 327, 330-31 (1986); *see also*, Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 405 (1997).

"A 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible [under state law] for establishing final policy with respect to the subject matter in question.'" Russell, at 847 *quoting* Hayes v. Faulkner County, 388 F.3d. 669, 674 (8th Cir. 2004)(*quoting* Pembaur, 475 U.S. at 483-84). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." Russell, at 847 (citation omitted).

If the alleged constitutional violator is not a "final policymaker", then liability may be established by showing that the alleged misconduct was so persistent among the rank-and-file employees of the municipality as to constitute a "custom" with the "force of law". "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled . . as to [have] the force of law.'" Russell, at 849 *quoting* Harris v.

City of Pagedale, 821 F.2d. 499, 504, n7 (8th Cir. 1987)(*quoting* Monell, 436 U.S. at 691). In order to establish a constitutional violation resulting from a municipal custom, a plaintiff must show that his/her alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized. Russell, at 849 *citing* Larson v. Miller, 76 F.3d. 1446, 1453 (8th Cir. 1996)(en banc). Central to this standard is that the alleged misconduct must be "pervasive constitutional violations"; thus, liability for an unconstitutional custom or practice cannot arise from a single act. McGautha, at 56-57 (citations omitted).

In his second amended complaint, plaintiff has not identified any course of action deliberately taken by an official with final authority to establish policy for St. Louis County. Furthermore, he has only identified one instance in which a police report was allegedly falsified. Furthermore, by his own admission, he is impermissibly attempting to impose §1983 liability upon St. Louis County for the "negligence" of its employees. Finally, it is well-established that in order for municipal liability to attach, there must be an unconstitutional act by the identified municipal employee, official, or agent of the municipality. Again, plaintiff has failed to allege any constitutional violation upon which relief can be granted by the defendant police officers. Plaintiff has failed to state a claim for municipal liability against any of the defendants, especially St. Louis County.

### Count II - Violation of Privacy Right involving Medical Records

Plaintiff alleges that the investigating officers violated his right to privacy by "willfully and wantonly apply[ing] for and obtain[ing] a subpoena to view his medical records. Although unclear, it appears that plaintiff is attempting to assert a Fourth Amendment violation, a Fourteenth Amendment right to privacy violation, as well as a Missouri state law violation.

At the outset, this Court notes that alleged violations of state laws, state-agency regulation, and/or state court orders do not themselves state a claim under §1983. Scheeler v. City of St. Cloud, Minn. et. al., 402 F.3d. 826, 832 (8th Cir. 2005) *citing* Whisman v. Rinehart, 119 F.3d. 1303, 1312 (8th Cir. 1997).

Plaintiff further appears to argue that the defendants' actions in obtaining a subpoena to acquire plaintiff's accident-related medical records violated a Missouri statutorily-created physician/patient privacy privilege. *Assuming arguendo* the existence of such a privilege, plaintiff's complaint fails to state a viable §1983 claim upon which relief can be granted.

"Whether an arrest occurs or not, law enforcement officers investigating a vehicle accident resulting in injury or death have a duty to prepare a written report of the investigation either at the time of and at the scene of the accident or thereafter by interviewing the participants or witnesses, and officers are required to file that report in a timely fashion." McHaffie v. Bunch, 891 S.W.2d. 822, 831 (Mo. 1995); §43.250 R.S.Mo. Missouri law does not prevent such an investigation including the proper discovery by law enforcement officials of a person's medical records related to such an accident. In fact, Missouri law specifically provides for the waiver of such a "privacy" interest. Missouri Statute §577.020 provides, in pertinent part:

> "1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.019 to 577.041, a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood pursuant to the following circumstances:
> > (6) If the person, while operating a motor vehicle, has been involved in a motor vehicle collision which resulted in a fatality or readily apparent serious physical injury as defined in section 565.002, R.S.Mo."[5]

---

[5]Given the extent of the plaintiff's pleaded injuries, the Court takes judicial notice that such injuries meet the definition of "serious physical injury" pursuant to §565.002 R.S.Mo.

"The central feature of the Implied Consent Law is that persons who avail themselves of the privilege of driving on the state's public streets and highways are deemed to have consented to a chemical analysis of their blood alcohol level or drug content. This `implied consent' allows law enforcement officers to obtain blood in circumstances in which a warrant or actual consent may otherwise be required." State of Missouri v. Smith, 134 S.W.3d. 35, 39 (Mo.App. 2004)(internal citations omitted); *see*, Guhr v. Director of Revenue, State of Missouri, 228 S.W.3d. 581, 583 (Mo. 2007). Plaintiff's lengthy narrative in his complaint impermissibly argues that the defendants lacked probable cause to subpoena his accident-related medical records. Probable cause is not required to have chemical analysis of blood alcohol level or drug content, nor to obtain the results of same. *See*, Smith, *supra.*; Cooper v. Gammon, 943 S.W.2d. 699, 704 (Mo.App. 1997)(a state may interfere with an individual's Fourth Amendment interest with less than probable cause and without a warrant if such an interference is only minimal and is justified by law enforcement purposes). Thus, any probable cause argument with regard to the subpoenaed medical records as part of the defendants' investigation into the accident fails under Missouri substantive law.

Plaintiff's next appears to contend that the subpoenaed medical records violated his Fourth and Fourteenth Amendment rights. Plaintiff appears to be alleging that the subpoenaed medical records were an unreasonable seizure violating his privacy rights.

The United States Supreme Court has recognized that "notions of substantive due process contained within the Fourteenth Amendment safeguard individuals from unwarranted governmental intrusions into their personal lives." Whalen v. Roe, 429 U.S. 589, 598 n.23 (1977); Cooksey v. Boyer, 289 F.3d. 513, 515 (8th Cir. 2002) *quoting* Whalen, *supra.*; Eagle v. Morgan, 88 F.3d. 620, 625 (8th Cir. 1996) *citing* Whalen, *supra.* This "right to privacy" includes

14

protection of an individual's interest in avoiding disclosure of personal matters. Whalen, 429 U.S. at 599-600; Cooksey, at 515; Eagle, at 625. This protection, however, is not without limitations, for not every disclosure of personal information will implicate this "right to privacy," and extends the protection only to highly personal matters considered to be "fundamental" or "implicit within the concept of ordered liberty". Cooksey, at 515-16 *citing* Paul v Davis, 424 U.S. 693, 713 (1976); *see also*, Riley v. St. Louis County, Missouri, et. al., 153 F.3d. 627, 631 (8th Cir. 1998). In order to violate the constitutional right of privacy "the information disclosed must be either a shocking degradation or an egregious humiliation . . . to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." Cooksey, at 516 *quoting* Alexander v. Peffer, 993 F.3d. 1348, 1350 (8th Cir. 1993); Riley, at 631; Eagle, at 625. One significant factor for a court to consider is whether the person had a legitimate expectation of privacy in the subject information. Cooksey, at 516 *citing* Eagle, at 625; *see also*, Riley, at 631.

"The standards elucidated in *Alexander* and *Eagle* set a high bar and implicitly hold that many disclosures, regardless of their nature, will not reach the level of a constitutional violation." Cooksey, at 516. The subpoena of medical records in an active police investigation of a motor vehicle accident resulting in serious physical injuries is such a disclosure. The medical information disclosed was not a "shocking degradation", an "egregious humiliation", or a "flagrant breach of a pledge of confidentiality". Plaintiff fails to allege that the information obtained was used in any manner to degrade or humiliate him, or was publicly disseminated outside the scope of the police investigation into the accident. In fact, the defendants' limited inquiry into only the medical records relating to his treatment and injuries resulting from the accident actually exonerated him as to alcohol or drug involvement in connection with the accident. Furthermore, plaintiff had no

15

reasonable expectation of privacy in these medical records pursuant to Missouri's Implied Consent Law. Finally, any reasonable expectation of privacy was essentially waived when plaintiff put his injuries at issue in this lawsuit. Thus, plaintiff's allegations fail to set forth any affirmative facts demonstrating that the subpoenaed medical records, during the course of a law enforcement investigation into a motor vehicle accident resulting in serious physical injuries, state a plausible claim of a constitutional violation.

### Count III - state claim for negligence

Having found that plaintiff has failed to state any plausible §1983 claims for constitutional violations under the Fourth and Fourteenth Amendments, the Court declines to exercise supplemental jurisdiction over the plaintiff's state-law claim for negligence. <u>Thomas v. Dickel, et. al.</u>, 213 F.3d. 1023, 1026 (8th Cir. 2000); 28 U.S.C. §1367(c)(3).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss (#8), as well as all supplements to said motion, be and is **GRANTED**. This cause of action, in its entirety, is hereby **DISMISSED**.

Dated this ___31st___ day of March, 2009.

*[signature]*

UNITED STATES DISTRICT JUDGE